OPINION
{¶ 1} This is an appeal from decisions of the Muskingum County Common Pleas Court striking Appellant's expert's affidavit and granting partial summary judgment to Appellee.
{¶ 2} The cross appeal was orally dismissed at oral arguments.
 STATEMENT OF THE FACTS AND CASE
{¶ 3} The facts indicate that Appellees, Stanley G. Burech and Donna L. Crow, are attorneys practicing under the name "Burech 
Crow".
{¶ 4} Ronald L. Kemp (Kemp), sole member of a limited liability company doing business as Zanesville Truck Center Ltd (Zanesville) and President of Wheeling Truck leasing Rental, Inc. now known as Lobster Truck Leasing Rental, Inc. (Wheeling) are Appellants herein.
{¶ 5} Appellants hired Appellees to represent them in the acquisition of Hartman Truck Center in Zanesville, Ohio (Hartman) including the leasing of structures and land related thereto.
{¶ 6} As the operator of Hartman had died, the land and buildings were owned by Century National Bank of Zanesville, successor trustee.
{¶ 7} Kemp provided Appellees with a written document as to the purchase and lease of the Hartman facilities. This contained an option to renew the proposed lease and an option to purchase the land and structures. The option to renew was omitted from the two-year lease agreement ultimately executed along with the purchase documents. While the trust as realty owner was absent in the documents, the actual lease was with the trustee as lessor. However, we are not concerned with this original lease or any deficiencies therein in this appeal.
{¶ 8} At the expiration of the initial lease, Appellants were faced with the dilemma that a new lease would be for a shorter term at a substantial increase in rent.
{¶ 9} Appellants did sign such subsequent lease as they were unable to exercise the purchase option.
{¶ 10} This lease lacked a purchase option. Appellant Crow testified in deposition that Kemp wanted it deleted.
{¶ 11} The major crux of the case is that Appellant asserts he was not advised of the risks and importance of omission of the option to purchase.
{¶ 12} At the present, Kemp no longer operates from the Hartman location.
{¶ 13} Appellants obtained attorney Steve Martin as an expert in this field.
{¶ 14} After Appellees filed their Civ.R. 56 Motion, Martin's affidavit was filed in opposition. The Court, on motion, struck such affidavit as not being in conformity with his deposition and granted Appellees' summary judgment motion.
{¶ 15} Three Assignments of Error are raised:
 ASSIGNMENTS OF ERROR
{¶ 16} I. "The trial court committed prejudicial and reversible error as a matter of law when it granted defendants-appellees' motion to strike the affidavit of plaintiffs-appellants' expert witness steve martin on grounds that it is inadmissible as hearsay because martin's affidavit testimony clarified and supplemented his deposition testimony, rather than contradicting it, making his affidavit testimony relevant, reliable, and therefore admissible, pursuant to Ohio Civ. R. 56(E).
{¶ 17} II. "The trial court committed prejudicial and reversible error when it granted in part defendants-appellees' motion for summary judgment as to the revised lease because, if the affidavit of expert witness steve martin had not been stricken, the totality of his testimony would have established a genuine issue of material fact that defendants-appellees committed legal malpractice by falling below the appropriate standard of care in failing to properly advise and counsel plaintiffs-appellants of the risks associated with omitting the option to purchase in the revised lease.
{¶ 18} III. "The trial court committed prejudicial and reversible error when it granted in part defendants-appellees' motion for summary judgment as to the revised lease because the deposition testimony of expert witness steve martin alone creates a genuine issue of material fact that defendants-appellees committed legal malpractice by falling below the appropriate standard of care requiring defendants-appellees to advise and counsel plaintffs-appellants of the risks associated with the removal of any significant clause from a commercial lease."
 I, II, III
{¶ 19} The First Assignment addresses the ruling which struck the Affidavit of Appellant's expert witness, Steve Martin. This Assignment is interrelated to the Second and Third Assignments in that it is maintained that, had the Affidavit not been stricken, the Appellee's Motion for Summary Judgment would fail.
{¶ 20} We address initially the standards applicable to a Civil Rule 56 Motion as summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
{¶ 21} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
{¶ 22} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
{¶ 23} The court's ruling on the motion to strike the expert's affidavit recites:
{¶ 24} "Plaintiffs claim legal malpractice based on the fact that defendants fell below the appropriate standard of care for attorneys by 1) failing to include an option to renew in the initial lease; 2) failing to include an option to purchase in the revised lease; and 3) failing to counsel and advise plaintiffs of the risks associated with entering into both the initial and the revised leases without these respective options in light of plaintiffs' long term financing arrangements.
{¶ 25} "Plaintiffs' expert, Attorney Steve Martin gave his deposition on June 19, 2002. Now by affidavit, the plaintiffs seek to `modify' his sworn testimony. Defendants have moved to strike the affidavit contending that the affidavit changes the sworn testimony of the deposition so significantly that it violates certain principles that would not survive the Daubert tests as set forth in Daubert v. Merrill Dow (1993)509 U.S. 579, 125 L.Ed 2d 469, 114 S. Ct. 2786 and Strickling v. Joe BehrPlumbing and Heating, 1999 Ohio App. LEXIS 4254 5th District — `gatekeeper theory'.
{¶ 26} "Plaintiffs argue that the affidavit does not contradict the expert's deposition but merely supplements and clarifies it.
{¶ 27} "Plaintiffs further argue that defendant made incorrect assertions and contradictions along with some correct assertions and that the bottom line is mere `clarification' not `contradiction'.
{¶ 28} "Expert Martin specified that he might render additional opinions in the future, at trial or otherwise.
{¶ 29} "Plaintiffs' reply to Defendants' position by citing authority to support the position that no breach of duty exists under these facts.
{¶ 30} "The testimony in question of the expert was taken in deposition wherein plaintiffs were afforded the luxury of cross-examination. The affidavit, if allowed, would be a modification of the expert's testimony without the benefit of cross-examination. The Court sees this in the nature of hearsay and will strike the affidavit. The affidavit is stricken."
{¶ 31} The subsequent ruling relative to the Appellees' Motion for Summary Judgment as contained in the Amended Entry states in part:
{¶ 32} "Plaintiffs' legal expert, Martin, in his deposition testified that it is not malpractice to omit an option to purchase in a lease if instructed to leave it out.
{¶ 33} "Plaintiff in answer to a question on deposition `Did you tell Stan or Donna that you wanted the second lease to have an option to purchase?' said `I cannot recall specifically saying that, no sir'.
{¶ 34} "As to the matters relating to the second lease, the Court feels that the tests of Summary Judgment are met `(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327."
{¶ 35} As stated, the review by this court is de novo.
{¶ 36} Since the issue as to the expert's affidavit being stricken rests upon whether such affidavit contradicts or supplements his deposition testimony, we have examined the testimony given under cross-examination and compared it to the affidavit in opposition to the Civ.R. 56 Motion. In this review, we have not considered his responses or statements related to the initial lease.
{¶ 37} Following are excerpts from the expert's deposition some of which relate to the lack of an option to renew which is the issue as to the first lease, not under consideration here, but are included as they relate to client instructions affecting the standard of care on the issue of malpractice as do the opinions on the absence of the option to purchase in the second lease:
{¶ 38} "Essentially, absent specific instructions to the contrary from the client, when a lawyer is preparing a draft lease for a tenant purchase or a business transaction where the tenancy would be in premises that the business has been operated out of and appear to be important to the business, that — and the tenant has provided a listing of the basic terms, which includes a provision regarding the lease, that it would be two years, and that at the end of the term, there would be the option of either renewal or an option to purchase. And when the financing — and when there would be financing and the primary term of the financing is ten years, that it is below the standard of care to prepare a two-year lease that has no options of renewal in it.
{¶ 39} "Do I understand you to say that the client could advise the attorney that the client did not wish an option to renew; and if the client did that, there would be no failure to meet the standard of care?
{¶ 40} "Assuming it was an intelligent what I will call waiver of the provision of putting in the renewal, yes. If there was a business reason for it and there had been discussions, yes, it would not then be below the standard of care.
{¶ 41} "If, for example, the client has had substantial negotiations with the other party and, for whatever business reasons, plans for the property, the other party is essentially refusing to go beyond a lease term of a specified number of years, then that's already been addressed, and it's unobtainable.
{¶ 42} "So as I understand, it's not that there is a duty to put an option to renew in a lease that you're saying exists. You're saying that absent a knowing waiver or consent by the client, the lawyer should have had the duty to advise the client that there should have been an option to renew?
{¶ 43} "No. What I'm saying is under normal circumstances, particularly when you are in the unusual circumstances of being able to prepare the lease for the tenant, that absent the usual circumstances, you would put options to renew in the lease.
{¶ 44} "Are you aware or do you have any information or facts to allow you to conclude that an option to renew would have been acceptable to the landlord?
{¶ 45} "Do I have knowledge? I have looked at what was transmitted to the defendants as the bullet points of the agreement; and my recollection is about the third bullet point from the bottom, it indicates that at the expiration of the two-year term, there would be the option of either renewal or an option to purchase.
{¶ 46} "My question was whether you have any ability to say that the landlord would have agreed to an option to renew?
{¶ 47} "It was my understanding, from reading the documentation, that what was transmitted was the substance of the agreement that had been reached between what at that time was thought to be the landlord and owner of the business and the purchaser.
{¶ 48} "So your conclusion that an option to renew would have been amenable to the landlord derives from your review of the bullet point letter of intent that was provided by Mr. Remp to his lawyers?
{¶ 49} "Correct.
{¶ 50} "* * * And as to the second lease with the option — with no option to purchase, what is your opinion on that?
{¶ 51} "I don't understand why the option to purchase was, you know — was not included. It appears, from the review of the depositions and the review of the documents, that the defendants are indicating that they were expressly instructed not to include the option to purchase.
{¶ 52} "* * * If the defendants were so expressly instructed, would there be a breach of the standard of care that you would testify was malpractice by the defendants?
{¶ 53} "Not if they were so instructed.
{¶ 54} We have then compared this testimony with the following from the affidavit:
{¶ 55} "If in fact Plaintiffs felt that an option to purchase was not necessary in the revised lease, then it is further my opinion based upon reasonable legal certainty that the standard of care owed to Plaintiffs in June and July of 2000 included a discussion with Plaintiffs that advised, counseled, directed and instructed them as to the risks associated with entering into the revised lease on August 1, 2000, without that revised lease containing an option to purchase, especially in light of the importance of the location of this business to these Plaintiffs.
{¶ 56} "From the material that I have reviewed, it appears that this advice and counsel did not take place. Therefore, it is further my opinion, based upon reasonable legal certainty, that Defendants fell below that standard of care by not so advising and counseling Plaintiffs as specified in paragraph 17.
{¶ 57} "It is further my opinion, based upon reasonable legal certainty, that the standard of care that Defendants owed Plaintiffs included a discussion with Plaintiffs about the revised lease that advised, counseled, directed, and instructed Plaintiffs that if they were not able to negotiate a satisfactory renewal lease at the end of the term of the revised lease, then they were at even further risk of losing the buildings and land upon which their business was located before the obligation to the bank had been satisfied, because Plaintiffs would not even have an option to purchase to consider.
{¶ 58} "From the material that I have reviewed, it appears that this advice and counsel did not take place. Therefore, it is further my opinion, based upon reasonable legal certainty, that Defendants fell below that standard of care by not so advising and counseling Plaintiffs as specified in paragraph 19.
{¶ 59} "It is finally my opinion, based upon reasonable legal certainty, that the above deviations from the standards of care owed to Plaintiffs by Defendants was the direct and proximate cause of damages to Plaintiffs."
{¶ 60} Keeping in mind that the expert did not sign the deposition at its taking but examined it and submitted twelve pages of corrections and notwithstanding the self serving statement at paragraph 9 of the affidavit that the purpose of the affidavit was to supplement his deposition, we come to the same conclusion as did Judge Swelling, to-wit: That the affidavit does contradict the deposition testimony rather than being a supplement.
{¶ 61} We therefore affirm the trial court's ruling which effectively results in a denial of each of the three Assignments of Error.
{¶ 62} We should note that it would be helpful to this court if counsel would accurately check cases cited. Appellee's Brief on page 17 relies on Colley v. Bazell (1980), 64 Ohio St.2d 243, for a proposition, which, if correct, would have been directly in point. In fact, such case involved adequate grounds for vacating a default judgment.
Boggins, J., Gwin, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed. Costs to Appellants.